REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1187

September Term, 2014

_____

CLAUDIA FRIEDETZKY

v.

ROGER HSIA

_____

Hotten,
Leahy,
Raker, Irma S.,
    (Retired, Specially Assigned),

JJ.
_____

Opinion by Leahy, J.
_____

Filed: July 6, 2015

Appellant Claudia Friedetzky filed a petition for custody of her child, M.J.,[1] in the Circuit Court for Prince George's County, Maryland. Appellee Roger Hsia (defendant below), a resident of New York, filed an answer requesting that the court order paternity testing of M.J., and then initiated discovery to acquire information relevant to matters of paternity and child support. Appellant then filed an amended complaint including claims for paternity, child support, and counsel fees, which was countered by Appellee's motion to dismiss for lack of personal jurisdiction.

The jurisdictional questions engendered by these actions concenter at the intersection of the Maryland Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Maryland Code (1984, 2012 Repl. Vol) Family Law Article ("F.L.") §§ 9.5-101 to 9.5-318, and the Maryland Uniform Interstate Family Support Act ("UIFSA"), F.L. §§ 10-301 to 10-359.[2] The UCCJEA, governing custody and visitation, and the

---

[1] We will refer to the minor child in this case by his initials.

[2] Further discussed *infra*, these uniform acts were first promulgated by the National Conference of Commissioners on Uniform State Law. All states, except Massachusetts (legislation pending), have enacted the UCCJEA. *Legislative Fact Sheet- Child Custody Jurisdiction and Enforcement Act*, Uniform Law Commission, http://www.uniformlaws.org/LegislativeFactSheet.aspx?title=Child%20Custody%20 Jurisdiction%20and%20Enforcement%20Act (last visited June 10, 2015), http://perma.cc/H86R-CXL4. All states and territories have enacted the first versions of UIFSA, *Legislative Fact Sheet – Interstate Family Support Act (1992) (1996)*, Uniform Law Commission, http://www.uniformlaws.org/LegislativeFactSheet.aspx?title=Interstat e%20Family%20Support%20Act%20(1992)(1996) (last visited June 10, 2015), http://perma.cc/4GAJ-F9NN. Only 37 states (including Maryland) have enacted the 2008 amendments thereto, although legislation to adopt the amendments is pending in 8 states and territories. *Legislative Fact Sheet – Interstate Family Support Act Amendments (2008)*, Uniform Law Commission, (continued . . . )

1

UIFSA, governing paternity and child support, were established to provide systematic and harmonized approaches to urgent family issues in a world in which parents and guardians, who choose to live apart, increasingly live in different states and nations. As separate legal schemes, the UCCJEA and UIFSA contain distinct jurisdictional provisions.

The central issue before us is whether a nonresident putative father's request for *paternity* testing in his answer to a resident mother's *custody* petition, *coupled with* his extensive discovery requests relating to paternity and child support were: (a) actions protected under the limited immunity provision of the UCCJEA, which permits a nonresident to appear in court regarding an issue of interstate custody without submitting to the jurisdiction of the court in other matters; or (b) affirmative requests for relief that satisfied the requisites for personal jurisdiction under Section 10-304(a)(2) of the UIFSA long-arm statute.

We hold that by affirmatively requesting genetic testing in his answer to Appellant's custody petition, and by initiating discovery relating to matters of paternity and child support, Appellee triggered the UIFSA long-arm statute and waived the limited immunity otherwise afforded in a custody proceeding under the UCCJEA. We further

---

http://www.uniformlaws.org/LegislativeFactSheet.aspx?Title=Interstate Family Support Act Amendments (2008) (last visited June 10, 2015), http://perma.cc/EZ7L-PNJF.

We will refer to *Maryland*'s codification of these uniform acts by their well-known acronyms, the UCCJEA and the UIFSA. *See* F.L. §§ 9.5-318, 10-359. Any further reference to the uniform acts as drafted by the National Conference of Commissioners on Uniform State Law will be specifically noted in the text or by citation to Uniform Laws Annotated.

conclude, in response to Appellee's alternative argument, that Appellee had sufficient minimum contacts with the State of Maryland by virtue of his actions to establish paternity that constitutionally permit the court's exercise of personal jurisdiction over him. Accordingly, we reverse the judgment of the Circuit Court for Prince George's County granting Appellee's motion to dismiss the amended petition, and remand for further proceedings.

## BACKGROUND

The parties engaged in an ephemeral affair in September 2005 in New York City, where they both lived at the time. Following their single act of intercourse, Appellant gave birth to M.J. in New York City on June 8, 2006. Throughout this timespan, Appellant was married to another man, whom she later divorced in 2010.[3]

In 2011, Appellant and M.J. relocated to Maryland where Appellant was offered a job. Appellee, who never communicated with or provided support for M.J., remains a resident of New York.

Two years after moving to Maryland, on July 31, 2013, Appellant filed a single-count custody petition against Appellee in the Circuit Court for Prince George's County requesting "immediate and permanent sole physical and legal custody" of M.J. After he was successfully served on November 14, 2013 in New York, Appellee, through counsel, filed a general line of appearance in the circuit court on January 13, 2014 as well as an answer to the custody petition. In his prayer for relief, Appellee requested that the

---

[3] The birth certificate contained in the record does not identify the father of M.J.

3

petition be dismissed with prejudice or denied, and that the court order genetic testing to determine the paternity of M.J. He also requested reasonable attorney's fees and "such other and further relief" that the court deem appropriate. Along with his answer, on January 13 Appellee served Appellant with 40 requests for documents and 15 interrogatories—including exhaustive requests for information about Appellant's sexual partners.[4] The requests sought, among other things, M.J.'s birth certificate, Appellant's marriage certificate, the judgment of divorce, communications from her former husband, and copies of Appellant's federal and state income tax returns for the years 2005, 2006, and 2007.

Two weeks later, Appellee filed an amended answer, removing only the request for attorney's fees, as well as a request for admission of facts. Appellee subsequently deposed Appellant on May 28, 2014 and questioned her about the existence of agreements for counsel fees and child support.[5]

Meanwhile, on March 25, 2014, Appellant filed an amended petition for the establishment of paternity, sole physical and legal custody, and child support (and

---

[4] For example, interrogatory number five requested Appellant to state whether she engaged in sexual intercourse during the years 2005 and 2006 and, if she answered in the affirmative, to identify every person with whom she had sexual intercourse, the location of that intercourse, and all persons present for each act.

[5] Although Appellee's discovery requests were filed well before the amended complaint, to be fair, however, by the time the deposition took place, Appellant had already filed her amended complaint adding the child support and counsel fee claims. Nevertheless, Appellee's failure was to continue pursuing discovery relating to child support and counsel fees, while claiming simultaneously that the court lacked jurisdiction over him with respect to these issues.

counsel fees). Appellant did not oppose Appellee's request for DNA testing, stating in the petition that "[b]oth Plaintiff and Defendant are in agreement that it is appropriate for the Defendant and the Minor Child to undergo such testing in order to establish his biological relationship to the Minor Child."

In response, on March 26, Appellee filed a motion to dismiss for lack of personal jurisdiction. In this motion, Appellee argued that the court could not exercise personal jurisdiction over him, a non-resident of Maryland, in proceedings for paternity, child support, or attorney's fees because the requirements of the long-arm statutes pertaining to child support and paternity contained in the Courts and Judicial Proceedings Article and the UIFSA were not satisfied. Appellee also withdrew his request for genetic testing, citing as grounds his discovery that Appellant had been married at the time M.J. was conceived and born.

In her opposition filed on April 15, Appellant countered that Appellee did not raise the issue of jurisdiction in his answer and that by requesting genetic testing, he purposefully availed himself of the benefits of the State of Maryland. Appellant further noted that Appellee appeared in the circuit court and engaged in discovery, specifically as to the paternity issue. Following Appellee's timely reply, the circuit court denied the motion to dismiss in an order dated May 1, 2014 (entered on May 16, 2014).

Appellee filed a motion for reconsideration, presenting more extensive arguments why the long-arm statutes applicable to the issues of paternity, child support, and counsel fees were not satisfied. The court held a hearing on the motion on June 30, 2014. The court explained that had the case been filed as a child support and paternity case at the

5

outset, jurisdiction would have been proper in New York, not Maryland. Having read the parties' written arguments, the court asked the parties to address (1) whether the establishment of personal jurisdiction in the custody matter can extend to the other issues raised in the amended complaint; and (2) whether *Glading v. Furman,* 282 Md. 200 (1978) was applicable to the case under consideration.

Regarding the first issue raised by the court, Appellee argued that Appellant initially brought a proper issue (sole legal and physical custody) within the court's jurisdiction and then attempted to "bootstrap in these other issues that [the court] wouldn't have jurisdiction over" by adding them in the amended complaint. Appellee maintained that under the UCCJEA, he properly filed an answer on the limited issue of child custody, but there was no jurisdiction to address the request for child support and paternity contained in the amended complaint. Appellant responded that it was Appellee who requested paternity testing in the first place, thereby availing himself to the jurisdiction of the Maryland court under UIFSA on the issue of paternity and child support.

The court observed that custody was obviously not in dispute; instead, the court commented, "[e]verybody knows that . . . you are fighting to keep your client from having to pay child support; alternatively, that you have put it off as long as possible. And they are fighting to get child support as soon as possible." The court expressed the central issue as whether it had jurisdiction to move forward or whether the child support and paternity claims needed to be litigated in New York. The court reserved this determination. Accordingly, the court signed a consent order prepared by the parties on

6

June 26, 2014 (entered on July 8, 2014), awarding sole legal and physical custody of M.J. to Appellant, but stating that "the court reserves on the remaining outstanding issues."

After the hearing, the parties filed memoranda addressing the *Glading* case, which held that once a court obtains jurisdiction over a party to an action, the court retains jurisdiction over the parties for all proceedings arising out of the original cause of action under the "continuing jurisdiction" doctrine. Appellee asserted that *Glading* was factually distinguishable because that case involved a former Maryland-resident defendant who was served in Maryland, whereas Appellee, a New York resident, was served in New York. He further argued that the case preceded the enactments of the UCCJEA and the UIFSA and that jurisdiction is not proper under those acts. Appellant rejoined, arguing, *inter alia*, that under *Glading*, the court had continuing jurisdiction over the child support and paternity claims because those claims arose out of the custody action; that Appellee had reasonable notice and opportunity to be heard on the added claims; that *Glading* is consistent with, not replaced by, the UCCJEA and UIFSA; and that personal jurisdiction was proper under the UIFSA long-arm statute.

On July 8, 2014, the court entered a summary order providing that "pursuant to MD Code Ann., Fam. Law § 9.5-108,[6] the Motion for Reconsideration is **GRANTED**"; that "the Consent Order dated June 27, 2014 shall remain in full force and effect"; and

---

[6] Discussed in detail *infra*, this provision provides, in relevant part, that "[a] party to a child custody proceeding . . . is not subject to personal jurisdiction in this State for another proceeding or purpose solely by reason of having participated, or of having been physically present for the purpose of participating, in the proceeding."

that "all remaining claims are **DISMISSED** without prejudice." The court then closed the case. Appellant noted a timely appeal on August 7, 2014.

Appellant presents six questions for our review:

I. "Whether a court may exercise personal jurisdiction over a nonresident for paternity and child support claims in connection with a custody claim where an independent ground for UIFSA jurisdiction is met;"

II. "Whether a nonresident who affirmatively prays for relief in the form of a paternity test waives contest to the exercise of UIFSA jurisdiction under § 10-304(a)(2);"

III. "Whether a nonresident who avails himself of the jurisdiction [of the court] by engaging in discovery practice on UIFSA claims consents to the exercise of UIFSA jurisdiction [protections] under § 10-304(a)(2);"

IV. "Whether a court may exercise continuing jurisdiction over paternity and child support claims arising from a custody claim under the principles of *Glading v. Furman* even if UCCJEA itself does not expressly grant jurisdiction over those claims;"

V. "Whether a nonresident who prays for relief in an answer and engages in discovery practice satisfies the minimum constitutional due process requirements for exercise of jurisdiction in an equitable action for child support;"

VI. "Whether, even absent prayer for relief and/or discovery practice, a nonresident who is personally served with process and voluntarily enters a general appearance in a custody action satisfies minimum constitutional requirements for exercise of jurisdiction in an equitable action for child support."

## DISCUSSION

Appellant argues that the circuit court erred in granting Appellee's motion to dismiss the remaining claims for child support, counsel fees, and paternity for lack of personal jurisdiction. To determine whether a Maryland court may exercise personal

8

jurisdiction over a non-resident defendant, a court must consider two factors: (1) whether a long-arm statute has been satisfied; and (2) whether the exercise of jurisdiction comports with due process. *Bond v. Messerman*, 391 Md. 706, 721 (2006) (citing *Mackey v. Compass Marketing, Inc.,* 391 Md. 117, 129-30 (2006)). "The applicable standard of appellate review of the grant of a motion to dismiss for lack of personal jurisdiction is whether the trial court was legally correct[.]" *Id.* at 718; *accord Kortobi v. Kass*, 410 Md. 168, 175 (2009).

## I.

## UCCJEA and the UIFSA Long-Arm Statute

Appellant argues that Appellee submitted to the circuit court's jurisdiction for the paternity, child support, and counsel fees claims under the UIFSA long-arm statute, F.L. § 10-304(a)(2), by requesting paternity testing in the answer he filed to Appellant's custody petition and by substantially litigating that issue through discovery.[7] Appellee counters that he did not submit to the personal jurisdiction of the court by participating in the child custody action because another statute, UCCJEA F.L. § 9.5-108(a), provides immunity from personal jurisdiction for participating in a custody proceeding, and that no applicable long-arm statute would permit the court's exercise of jurisdiction over him.

---

[7] In her briefing, Appellant also avers that Appellee submitted to the personal jurisdiction of the court by entering a general appearance and by filing any answer. However, UCCJEA, F.L. § 9.5-108(a) establishes, as discussed *infra*, that a defendant is not deemed to have submitted to personal jurisdiction of a court in other matters solely by reason of participation in a custody proceeding.

9

These arguments lead us to the intersection of the jurisdictional provisions contained in the UCCJEA and UIFSA. To better navigate the crossroads of these two statutes, we begin with a brief comparison. Our starting point, as recounted above, is Appellant's initial petition raising the single issue of custody. A custody case that involves parties located in different states or countries implicates the UCCJEA.

In 1968, the National Conference of Commissioners on Uniform State Laws promulgated the predecessor statute to the UCCJEA, namely, the Uniform Child Custody Jurisdiction Act ("UCCJA") to address, among other things, "the problem of conflicting custody decrees among states and foreign countries."[8] *Toland v. Futagi*, 425 Md. 365, 371 (2012) (quoting Unif. Child Custody Jurisdiction Act, Prefatory Note, 9 U.L.A. Part 1A, at 262 (1999)). Thereafter, in 1997, the National Conference promulgated the UCCJEA to revise the UCCJA in order to coincide with federal enactments and to resolve the consequent thirty years of conflicting case law caused by states' various

_____

[8] The prefatory note to the UCCJA further provided:

> There is growing public concern over the fact that thousands of children are shifted from state to state and from one family to another every year while their parents or other persons battle over their custody in the courts of several states . . . It is well known that those who lose a court battle over custody are often unwilling to accept the judgment of the court. They will remove the child in an unguarded moment or fail to return him after a visit and will seek their luck in the court of a distant state where they hope to find—and often do find—a more sympathetic ear for their plea for custody. The party deprived of the child may then resort to similar tactics to recover the child and this "game" may continue for years, with the child thrown back and forth from state to state, never coming to rest in one single home and in one community.

Unif. Child Custody Jurisdiction Act, Prefatory Note, 9 U.L.A. Part 1A, at 262-63.

10

enactments of the UCCJA. Unif. Child Custody Jurisdiction and Enforcement Act, Prefatory Note, 9 U.L.A. Part 1A, at 650 (1997). Maryland adopted the UCCJEA, without any variations relevant to the instant case, in 2004,[9] as successor to the Maryland Uniform Child Custody Jurisdiction Act, which was first enacted in 1975.[10]

Maryland's enactment of the UCCJEA (and its predecessor statute) sought to establish the general procedures for child custody proceedings and to specify the basis for jurisdiction over custody matters. *Toland*, 425 Md. at 374. Importantly, the Act governs actions involving legal custody, physical custody, and visitation with a child; it does not govern actions for child support or other monetary obligations of an individual. F.L. § 9.5-101(d); *see* F.L. § 9.5-101(e)(2).

The UIFSA, on the other hand, governs claims for child support and paternity testing and does not address custody. *See* F.L. §§ 10-301 to -359. The National Conference of Commissioners on Uniform State Law first promulgated the UIFSA in 1992, which has been amended since then in 1996 and 2001.[11] Unif. Interstate Family Support Act, Prefatory Note, 9 U.L.A. Part IB, at 281-82 (2001). The Act seeks to

---

[9]  2004 Laws of Maryland, ch. 502 (H.B. 400) (codified as amended at F.L. §§ 9.5-101 to -318).

[10]  The Maryland Uniform Child Custody Jurisdiction Act was codified in Article 16, §§ 184 to 207 of the Maryland Code (1957, 1966 Repl. Vol., 1977 Supp.) and later repealed and recodified as F.L. §§ 9.5-201 to 9.5-403 (1984, 1985 Supp.).

[11] This Act completely replaced the predecessor child support acts in existence at the time: The Uniform Reciprocal Enforcement of Support Act (URESA) and its revised version, RURESA. Unif. Interstate Family Support Act, Prefatory Note, 9 U.L.A. Part IB, at 161.

address the problems stemming from multiple child support orders issued by different states relating to one child and does so by implementing a "one-order system" whereby only one state's order governs the support obligation at any given time. *Superior Court v. Ricketts*, 153 Md. App. 281, 318-19 (2003) (citations omitted); *Holbrook v. Cummings*, 132 Md. App. 60, 65-66, *cert. granted*, 360 Md. 273 (2000). To facilitate this result, the Act establishes "procedural and jurisdictional rules for interstate child support proceedings, including the enforcement of foreign child support orders." *Rickets*, 153 Md. App. at 319. Maryland adopted this Act, without any variations relevant to the instant case, in 1997 to conform to federal requirements. 1997 Laws of Maryland, ch. 609 (S.B. 636).[12]

Although each act is distinct, both seek to streamline and synchronize certain family law issues for the benefit of children whose parents and guardians live in different states or countries. They contain special jurisdictional provisions that delimit when a party may participate in an action in a foreign state to resolve custody and visitation under UCCJEA, or paternity and child support under UIFSA, without thereby submitting to the jurisdiction of the foreign state in other matters. The case before us, however, presents interlocking issues: whether Appellee's actions in response to the UCCJEA

---

[12] In 1996, Congress enacted the Personal Responsibility And Work Opportunity Reconciliation Act ("PRWORA," more commonly known as welfare reform), P.L. 104-193, 110 Stat. 2105 (codified, in part, at 42 U.S.C. § 666). 42 U.S.C. § 666 required states to adopt UIFSA as a prerequisite to the receipt of certain federal funding. To comply with this requirement, Maryland adopted UIFSA in 1997. It appears Congress required states to adopt UIFSA to address the lack of uniformity that had developed over the fifty-year history of UIFSA's predecessor, URESA, which resulted in weak enforcement of interstate cases.

*custody* petition effectively resulted in submission to the court's exercise of personal jurisdiction over the subsequently added claims for child support and paternity testing under the UIFSA. In other words, metaphorically speaking, where these statutes intersect on matters relating to paternity, custody and child support, did Appellee's affirmative acts cause him to veer off one highway and onto another? As Appellee correctly states, the UCCJEA provides limited immunity to nonresidents participating in a child custody proceeding in this State, such that the nonresident does not submit to personal jurisdiction for other matters solely by participating in the custody action. Therefore, before turning to Appellant's argument that Appellee's actions satisfied the UIFSA long-arm statute, we first must consider whether the UCCJEA provided limited immunity to Appellee.

## A. The Limited Immunity Provided by the UCCJEA

### 1. The Limited Immunity Provision

To make an initial child custody determination under the UCCJEA,[13] a court of this State has jurisdiction over a custody action if Maryland is the minor child's home state at the time the proceeding commenced.[14] F.L. § 9.5-201(a)(1). Thus, a respondent

---

[13] "'Initial determination' means the first child custody determination concerning a particular child." F.L. § 9.5-101(i).

[14] In the instant case, it is undisputed that the circuit court had jurisdiction over Appellant's custody claim under the UCCJEA, because Maryland was unquestionably M.J.'s home state at the time this case was initiated. It appears that, like the uniform statute, the Maryland UCCJEA provides limited immunity, such that the nonresident does not submit to personal jurisdiction for other matters solely by participating in the custody action in order to make a child custody determination. F.L. § 9.5-201(c) ("Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination."). The commentary to the Uniform Act for this (continued . . . )

to a custody petition generally may not have any choice but to litigate a custody issue in Maryland if Maryland was the minor child's home state at the time the custody action was filed, absent, for example, a court's decision to decline jurisdiction because of inconvenience or unjustifiable conduct under F.L. §§ 9.5-207, -208. Accordingly, the UCCJEA provides limited immunity to a nonresident party who chooses to participate in a child custody proceeding in Maryland:

> A party to a child custody proceeding, including a modification proceeding, or a petitioner or respondent in a proceeding to enforce or register a child custody determination, is not subject to personal jurisdiction in this State for another proceeding or purpose solely by reason of having participated, or of having been physically present for the purpose of participating, in the proceeding.

F.L. § 9.5-108(a).[15] In other words, the UCCJEA permits the nonresident party to participate in actions involving custody and visitation without exposing himself or herself

---

provision provides that "neither minimum contacts nor service within the State in required for the court to have jurisdiction to make a custody determination." Unif. Child Custody Jurisdiction and Enforcement Act, § 201 cmt., 9 U.L.A. Part 1A, at 673. Given the constitutional dictate of due process, the notion that personal jurisdiction is not required to enter a custody decree against an individual seems confounding. *See, e.g.,* Barbara Ann Atwood, *Child Custody Jurisdiction and Territoriality*, 52 OHIO ST. L.J. 396 (1991). Indeed, Alabama law, for example, strays from the language of the Uniform Act and requires personal jurisdiction for both parties in a custody action pursuant to the dictates of due process. *See Ex parte Diefenbach*, 64 So. 3d 1091, 1096 (Ala. Civ. App. 2010). We need not, however, consider the constitutionality of F.L. § 9.5-201(c) based on the facts of this case.

[15] The UIFSA has a similar, inverse provision, as it is directed specifically to the plaintiff who may file a support or custody petition in the respondent's home state without submitting to the jurisdiction of that state. As adopted in Maryland, F.L. § 10-326(a) provides that "[p]articipation by a plaintiff in a proceeding under this subtitle before a responding tribunal . . . does not confer personal jurisdiction over the plaintiff in another proceeding."

to personal jurisdiction in Maryland in another proceeding. Thus, a nonresident party may seek custody of the minor child without being deemed to have affirmatively sought relief resulting in submission to a court's personal jurisdiction in other matters. Unif. Child Custody Jurisdiction and Enforcement Act, § 109 cmt., 9 U.L.A. Part 1A, at 665. However, as discussed *infra*, a nonresident party may waive limited immunity under the UCCJEA if they seek affirmative relief relating to matters outside the scope of custody and visitation.

2. The Definition of "Child Custody Proceeding"

The limited immunity provision applies to a party in a "child custody proceeding." Under the UCCJEA, a "child custody proceeding," is defined as follows:

(1) "Child custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue.

(2) "Child custody proceeding" includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, **paternity**, termination of parental rights, and protection from domestic violence, in which the issue may appear.

(3) "Child custody proceeding" does not include a proceeding involving juvenile delinquency, contractual emancipation, or enforcement under Subtitle 3 of this title.

F.L. § 9.5-101(e) (emphasis added).

Because the definition of a "child custody proceeding" under the UCCJEA includes a paternity proceeding in which the issue of custody arises, we must consider, before turning to jurisdiction under the UIFSA long-arm statute, whether Appellee's request for genetic testing to prove paternity is part of a custody proceeding, and accordingly, whether Appellee remains protected under the immunity provision of F.L. §

15

9.5-108(a) from submitting to the personal jurisdiction of the court.[16] After reviewing the plain meaning and the commentary to the definition in subsection (e)(2) of F.L. § 9.5-101 and the limited immunity provision of F.L. § 9.5-108(a), we conclude that Appellee's affirmative request for paternity (an action for which personal jurisdiction is required) was not encompassed as part of a "child custody proceeding" for purposes of applying the UCCJEA limited immunity provision. In other words, the statute does not extend the limited immunity provisions of the UCCJEA to cover affirmative relief relating to paternity issues, or, for that matter, for the total spectrum of affirmative relief that may be obtain in a proceeding for "divorce, separation, neglect, abuse, dependency, guardianship, . . . termination of parental rights, or protection from domestic violence[.]" Such a reading of the statute would render unlimited the limited immunity provisions of the statute.

The commentary to the Uniform Custody Act explains that the intention of listing example proceedings in subsection (e)(2) of F.L. § 9.5-101 was to "remove[] any controversy about the types of proceedings where a custody determination can occur." Unif. Child Custody Jurisdiction and Enforcement Act, § 102 cmt., 9 U.L.A. Part 1A, at 659. A "custody determination" is defined as an order "providing for the legal custody, physical custody, or visitation with respect to a child." F.L. § 9.5-101(d)(1). The

---

[16] We note that Appellee did not raise this jurisdictional argument in his briefing. Appellant, however, addressed this issue in her Memorandum of Law in Opposition to Defendant's Motion for Reconsideration of the Denial of the Motion to Dismiss for Lack of Personal Jurisdiction, arguing that Appellee submitted to the jurisdiction of the court, at minimum, as to the issue of paternity.

prefatory note describes the definition of "child custody proceeding" as "sweeping," because "with the exception of adoption, [it] includes virtually all cases that can involve custody or visitation with a child as a 'custody determination.'" Unif. Child Custody Jurisdiction and Enforcement Act, Prefatory Note, 9 U.L.A. Part 1A, at 651-52. The commentary further provides that although "a determination of paternity is covered by . . . [UIFSA], the custody and visitation *aspects* of paternity cases are custody proceedings." Unif. Child Custody Jurisdiction and Enforcement Act, § 102 cmt., 9 U.L.A. Part 1A, at 659 (emphasis added).

This commentary reflects that the definition in subsection (e)(2) was intended to resolve confusion regarding *the kinds of proceedings* in which *custody determinations* may be made. This Court and other jurisdictions have relied on this definition to resolve whether an order relating to custody that occurred in one of the listed proceedings constituted a "custody determination" requiring application of or adherence to the UCCJEA. Some of these cases have held that if a custody or visitation issue arises in one of those listed proceedings, then a court must determine whether it has *subject matter* jurisdiction to reach a determination regarding that issue under the UCCJEA. *See In re John F.,* 169 Md. App. 171, 180, 183 (2006) (stating that the definition of "child custody proceeding" includes CINA proceedings and, therefore, "[t]he court was . . . required to have jurisdiction over the subject matter under the UCCJEA[.]"); *see also, e.g., M.E.V. v. R.D.V.,* 57 A.3d 126, 130-31 (Pa. 2012) (holding that a complaint for divorce that included averments regarding custody commenced a child custody proceeding under the UCCJEA definition as to require the circuit court to determine whether it could exercise

17

subject matter jurisdiction over the custody issue); *Berwick v. Wagner,* 336 S.W.3d 805, 811-14 (Tex. App. 2011) (holding that a paternity action in which custody issues were raised constituted a "child custody proceeding" and that the order entered pursuant to that action, even though not specifically addressing custody, was required to be recognized and registered pursuant to the UCCJEA); *Santiago v. Riley,* 79 A.D.3d 1045, 1045-46 (N.Y. App. Div. 2010) (holding that a petition for family offense gave rise to a child custody proceeding under the UCCJEA definition as to require the court to determine whether it should exercise temporary emergency jurisdiction over the custody issue); *In re B.P.,* 184 P.3d 334, 350 (Mont. 2008) (concluding that based on the definition of "child custody proceeding," "the UCCJEA drafters and the states which adopted it clearly intended to expand the reach of the statute to include child abuse and neglect proceedings" and, therefore, the lower court's order addressing custody in the context of a youth-in-need-of-care proceeding implicated the UCCJEA's jurisdictional provisions, especially that of exclusive, continuing jurisdiction); *B.T.W. ex rel. T.L. v. P.J.L.*, 956 A.2d 1014, 1016 (Pa. Super. Ct. 2008) (concluding that a petition for child abuse gave rise to child custody proceeding under the UCCJEA definition as to permit the court, which had jurisdiction under the UCCJEA, to modify a custody issue included on the order entered pursuant to the abuse action).

Here, the instant action began as one solely for custody. Because Maryland was M.J.'s home state for at least six months prior to commencement of the action, it was undisputed that the circuit court had subject matter jurisdiction over the custody action under the UCCJEA. In other words, this is not a case in which the parties began a

paternity litigation (which would have required Appellee to submit to the jurisdiction of the court in any event), and subsequently the issue of custody arose, prompting the court to make a determination regarding the custody issue. It is this latter scenario that subsection (e)(2) was intended to address, namely, to establish that a custody determination made in the paternity proceeding, if any, would be subject to the UCCJEA.

Moreover, in addition to the stated purpose of subsection (e)(2), the Uniform Act's commentary to the limited immunity provision provides that the aim of providing immunity under F.L. § 9.5-101(e)(2) was to allow nonresidents to participate in a custody proceeding in this State without submitting to the jurisdiction of the court in other matters, because without such a provision, nonresidents would be forced to choose between conceding custody to the petitioner or fighting for custody and running the risk of being subjected to a foreign court's jurisdiction for all related purposes. Unif. Child Custody Jurisdiction and Enforcement Act, § 109 cmt., 9 U.L.A. Part 1A, at 665. Stated differently, the provision protects an individual appearing for the purposes of custody from subjecting himself to the jurisdiction of the court for other purposes.

Issues pertaining to paternity and custody commonly overlap, so ascertaining the applicability of the limited immunity provision of the UCCJEA against the requisites of the UIFSA long-arm requires a multi-layered analysis that includes the type of proceeding involved and whether the parties engaged in affirmative actions that trigger long-arm jurisdiction. In the case at bar, had Appellee only denied paternity, or, had Appellant filed the paternity and child support claims at the outset, Appellee certainly would be protected by the immunity provision and could have moved to dismiss those

19

paternity and child support claims on jurisdictional grounds. Instead, he affirmatively requested the court to order genetic testing, and proactively engaged in discovery on issues he claims he has not consented to litigate in the Maryland forum. The commentary accompanying the UCCJEA immunity provision does not indicate that the provision was intended to permit a nonresident litigant to purposefully avail himself of the benefits of a foreign court for claims over which personal jurisdiction would normally be required—like paternity—and continue to be shielded under F.L. § 9.5-101(e)(2) from being subject to any other related claim so long as a custody issue was involved. This would permit a nonresident litigant to avail himself of the resources of this State—here, the judicial and extra-judicial services surrounding paternity litigation and testing—without submitting to the personal jurisdiction of this State. The fact that such affirmative requests for relief trigger the UIFSA long-arm statute for paternity claims, as discussed next, further delimits the boundaries of the UCCJEA's immunity protections.

**B.     The UIFSA Long-Arm Statute**

Having concluded that an affirmative request for paternity testing along with discovery demands relating to paternity and child support are matters beyond the scope of a "child custody proceeding" for purposes of applying limited immunity under UCCJEA, we turn to the question of whether these actions implicate the UIFSA long-arm statute governing child support and paternity. A petitioner seeking to establish personal jurisdiction under UIFSA over a nonresident respondent in this context has several options. The petitioner could file a UIFSA petition in the respondent's home state, or the petitioner could invoke the UIFSA long-arm statute to obtain personal jurisdiction over

20

the respondent in the petitioner's home state. *See* Unif. Interstate Family Support Act, Prefatory Note, 9 U.L.A. Part IB, at 185-86. The UIFSA long-arm statute enumerates seven grounds for establishing personal jurisdiction over a nonresident defendant in relation to child support and paternity claims:

> (a) In a proceeding *to establish or enforce a support order or to determine parentage,* a tribunal of this State may exercise personal jurisdiction over a nonresident individual if:
>
> > (1) the individual is personally served within this State;
> >
> > *(2) the individual submits to the jurisdiction of this State by consent in a record, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;*
> >
> > (3) the individual resided with the child in this State;
> >
> > (4) the individual resided in this State and provided prenatal expenses or support for the child;
> >
> > (5) the child resides in this State as a result of the acts or directives of the individual;
> >
> > (6) the individual engaged in sexual intercourse in this State and the child may have been conceived by that act of intercourse; or
> >
> > (7) there is any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction.

F.L. § 10-304 (emphasis added). As one can glean from its plain language, the UIFSA long-arm statute is designed to be as broad as constitutionally permissible. *See* Unif. Interstate Family Support § 201 cmt., 9 U.L.A. Part IB, at 185. Relying on subsection (a)(2), Appellant contends that the circuit court erred in dismissing the child support, counsel fees and paternity claims for lack of personal jurisdiction because Appellee

21

waived any contest to the court's jurisdiction by affirmatively requesting the court to order genetic testing to establish paternity in his answer to the custody petition, and by vigorously litigating the issues of child support and paternity.[17]   We agree.

The immunity provision contained in UCCJEA, F.L. § 9.5-108(a), and cited by the circuit court in its order dismissing the instant action, provides that personal jurisdiction will not exist "solely" by virtue of participation in a custody proceeding.  Here, however, Appellee did not confine his participation to the issue of custody, as he could have, by simply denying paternity as his defense or averring lack of sufficient information to admit or deny the allegations presented in Appellant's petition.  *See Marriage of Torres,* 62 Cal.App.4th 1367, 1380-81 (Cal. Ct. App. 1998) (holding that the petitioner was not protected by the limited immunity provision of the UCCJA, predecessor to the UCCJEA, because her petition sought affirmative relief with respect to financial support instead of simply contesting the pendente lite orders relating to custody and visitation and, as a

---

[17] Although Appellant relies on the UIFSA long-arm statute to establish personal jurisdiction over Appellee, Appellee, nevertheless, offers the argument that jurisdiction would not otherwise be proper under Maryland Code (1973, 2013 Repl. Vol.), Courts & Judicial Proceedings Article, § 6-103.1 and § 6-103.2.  The first, § 6-103.1, provides jurisdiction over a nonresident defendant for child support if the parties were married in Maryland or if the obligation to pay child support or counsel fees arose under Maryland law or under an agreement executed by one of the parties in Maryland.  The second statute, § 6-103.2, provides jurisdiction over a nonresident defendant for paternity if the plaintiff is a Maryland resident at the time of the lawsuit, the defendant has been served in compliance with Maryland rules, and the act of conception occurred in Maryland.  We note that Appellee describes these statutes as exclusive, implying that these statutes must be satisfied in order for personal jurisdiction to arise.  Yet, the plain, unambiguous language of both statutes is permissive; they provide that a court *may* exercise jurisdiction *if* the provisions therein are satisfied. Therefore, that these statutes are not satisfied does not preclude the court's exercise of personal jurisdiction.

result, finding that she submitted to the personal jurisdiction of the court). Such a response would have left the onus of establishing paternity on Appellant. Indeed, Appellant would have had to file a petition for paternity testing in *New York*, Appellee's home state, because it is undisputed that no other provision of the long-arm statute would have been satisfied to permit proceedings in Maryland absent Appellee's waiver or consent.

Instead, Appellee prayed that the court "order genetic testing be performed to determine the paternity of the minor child that is the subject of this case." In other words, Appellee *invoked* the court's jurisdiction by affirmatively requesting relief, particularly coupled with his requests for discovery on the issues of paternity and child support, which extend beyond the realm of custody alone.[18] Indeed, the comment to subsection (a)(2) of the original Uniform Act stated that this section "expresses the principle that a nonresident party concedes personal jurisdiction by seeking affirmative relief[.]" *See* Unif. Interstate Family Support § 201 cmt., 9 U.L.A. Part IB, at 186. Other states have applied this provision to hold that a request for affirmative relief invokes the jurisdiction of a court and thus constitutes a waiver of the defense of personal jurisdiction under the UIFSA long-arm statute. *See*, *e.g.*, *Harbison v. Johnston*, 28 P.3d 1136, 1140 (N.M. 2001) (holding that the father invoked the jurisdiction of the district court when he filed

---

[18] We need not address, today, whether the request for paternity alone would be enough to confer jurisdiction.

his visitation enforcement petition,[19] and that "[o]nce Father invoked and submitted himself to the jurisdiction of New Mexico, he could not then attempt to limit his appearance solely to attacking the personal jurisdiction of the court in the support portion of the proceedings" (citations omitted)); *Franklin v. Com., Dep't of Soc. Servs. ex rel. Franklin*, 497 S.E.2d 881, 886 (Va, App. 1998) (holding that by requesting affirmative relief in the form of a petition for show cause, the father submitted himself to the authority of the court); *cf. Dep't of Revenue ex rel. Godoy v. Castro*, 786 So.2d 659, 660 (Fla. Dist. Ct. App. 2001) (holding, in a state-initiated paternity action, that the defendant waived the defense of lack of jurisdiction for improper service of process by filing a motion for blood testing, because he "was not merely denying paternity, he was asking the court to accept jurisdiction in order to take an action which would determine the merits of the case against him, and he was willing to accept the benefits of the court's action"). *But see Hollowell v. Tamburro*, 991 So.2d 1022, 1025-26 (Fla. Dist. Ct. App. 2008) (rejecting mother's argument that father waived the defense of personal jurisdiction by conceding paternity in his pleadings, because his actions were consistent with his right to participate in custody proceedings under the immunity clause of the

---

[19] In that case, the father argued that Texas's adoption of the UCCJEA contained an "immunity" provision (similar to Maryland's) providing that a party to a child custody proceeding does not submit to the jurisdiction of the court solely by reason of having participated in a custody proceeding. *Id.* at 1140. However, New Mexico had not, at that time, adopted the UCCJEA and, therefore, that provision was not applicable in that state. *Id.* at 1141-42. As a result, the court rejected Appellant's immunity argument. *Id.* at 1142.

Florida UCCJEA statute and because "[h]e sought no relief beyond a 'child custody determination' under the UCCJEA").

Maryland appellate courts have not yet reported a case in which a respondent has requested affirmative relief meeting the requisites of the UIFSA long-arm statute. However, in a different context, Maryland courts have recognized that a request for affirmative relief may result in submission to personal jurisdiction. *See, e.g., McCormick v. St. Francis de Sales Church*, 219 Md. 422, 429 (1959) ("In the instant case the assertion of defenses on the merits, in the motion to strike the declaration, was an invocation of the jurisdiction of the court, even though, procedurally, it was improperly coupled with the motion to quash. We think the filing of the motion operated as a general appearance and constituted a waiver of the preliminary objection. A person who denies that a court has jurisdiction and asks relief on that ground cannot ask anything of the court which is inconsistent with the want of such jurisdiction." (citations omitted)).

We hold that Appellee's affirmative request for relief in the form of genetic testing to establish paternity of M.J., coupled with his efforts to obtain discovery on matters relating to paternity and child support, constituted grounds for personal jurisdiction under the UIFSA long-arm statute, F.L. § 10-304(a)(2). Appellee certainly anticipated receiving the benefits of the paternity testing if ordered by the circuit court and thus availed himself of the advantages and protections of Maryland. Indeed, this request was not left barren; instead, Appellee substantially litigated and explored the issue of paternity in his discovery requests and in the deposition of Appellant. These actions were patently inconsistent with his motion for dismissal for lack of personal jurisdiction when

Appellant amended her complaint to include paternity and child support. As the old adage goes, one cannot un-ring a bell: once Appellee invoked the court's jurisdiction by requesting paternity testing, he could not then retract it, deciding, instead, to move to dismiss for lack of personal jurisdiction. Thus, we hold that F.L. § 10-304(a)(2)—the UIFSA long-arm statute—was satisfied in the instant case, and the circuit court could exercise jurisdiction over Appellee for the paternity, child support, and counsel fees claims.

## II.

### *Glading v. Furman*

Because we conclude that Appellee invoked the circuit court's jurisdiction by requesting paternity testing, we need not fully address Appellant's alternative personal jurisdiction argument under *Glading v. Furman*, 282 Md. 200 (1978). We note, however, that this case was inapposite to the issues before us. *Glading* involved the doctrine of continuing jurisdiction, which stands for the proposition that when a state obtains personal jurisdiction over a party in an action, that jurisdiction continues throughout all subsequent proceedings that arise out of the original cause of action, even if one of the parties moves out of state in the interim. *Id.* at 204 (quoting Restatement (Second) of Conflict of Laws § 26 (1971)) (quotation marks omitted). The doctrine is rooted in the rationale that without continuing jurisdiction, a court may not ever be able to render a final judgment if one of the parties, despite being properly served within Maryland, then removes himself or herself "while proceedings arising out of the original cause of action yet remained to be resolved." *Id. Existing* personal jurisdiction is a necessary component

to the *continuing* jurisdiction doctrine. In the case *sub judice*, Appellee did not live in Maryland, was not served in Maryland, and the Maryland courts did not obtain personal jurisdiction over Appellee in any prior proceeding. Indeed, the main issue in this case has been whether, by requesting affirmative relief and engaging in discovery, Appellee submitted to the jurisdiction of the court in a custody case which otherwise would not require personal jurisdiction over Appellee under the UCCJEA.

### III.

### *Minimum Contacts*

Now that we have concluded the UIFSA long-arm statute was satisfied in this case, we must consider whether personal jurisdiction comports with due process based on the facts of this case. *See, e.g., Johnston v. Johnston,* 825 N.E.2d 958, 963 (Ind. Ct. App. 2005) (requiring consideration of whether the UIFSA long arm statute was satisfied as well as whether personal jurisdiction would comply with the Due Process Clause); *In re Marriage of Malwitz*, 99 P.3d 56, 59 (Colo. 2004) (holding that the lower court properly exercised personal jurisdiction over the defendant based on satisfaction of the UIFSA long-arm statute as well as the Due Process Clause).

"To comply with the Due Process Clause of the Fourteenth Amendment, the exercise of personal jurisdiction over an out-of-state defendant requires that the defendant have established minimum contacts with the forum state and that to hale him or her into court in the forum state would comport with traditional notions of fair play and substantial justice." *Bond, supra,* 391 Md. at 722-23 (citations omitted). "In determining whether minimum contacts exist, we consider (1) the extent to which the defendant has

27

purposefully availed himself or herself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 723 (citations omitted).

Appellant argues that Appellee has sufficient minimum contacts with Maryland based on his litigation efforts below. Appellee argues that he has "virtually no contacts with the State of Maryland," stressing that he has never resided in Maryland; that he has never done business in Maryland; that both parties were New York residents at the time of conception; and that conception occurred in New York. Appellee further contends that the exercise of jurisdiction over him would be fundamentally unfair and unjust.

Appellee's request for affirmative relief from a Maryland court is a clear contact with the State of Maryland. *See Franklin v. Com., Dep't of Soc. Servs., Div. of Child Support Enforcement ex rel. Franklin*, 497 S.E.2d 881, 886 n.5 (Va. App. 1998) (holding that the defendant-father had minimum contacts with the State of Virginia because his acts resulted in the children's residence in Virginia and because the father moved for visitation and a petition for show cause, each an affirmative request for relief); *Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State Univ.,* 665 N.E.2d 914, 919 (Ind. Ct. App. 1996) (holding, in the context of evaluating the nature of the defendant's contacts with the State of Indiana, that "[w]hen a party seeks affirmative relief from a court before interposing a timely objection to the court's jurisdiction over his person, he has voluntarily submitted himself to the court's jurisdiction and is estopped from challenging the lack of personal jurisdiction."). Appellee cannot purposefully avail

28

himself of the benefits of the State of Maryland by requesting the court to take action to favor his position as to paternity, substantially litigate that issue through discovery, and then backpedal and revoke that submission to the court's jurisdiction. We conclude that the circuit court's exercise of jurisdiction over Appellee in Maryland under the facts presented in this case comports with traditional notions of fair play and substantial justice.

**JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS ASSESSED TO APPELLEE.**