*Anthony Fludd v. Donielle Kirkwood*
No. 1297, Sept. Term, 2020
Opinion by Leahy, J.

**Family Law > Child Support > Equitable Defenses > Laches**
When determining the appropriateness of applying laches to a child support action, courts must consider the best interest of the child and the parents' *continuing* duty to "support" and "care" for the child. Maryland Code (2014, 2019 Repl. Vol.), General Provisions Article , § 1-401

**Family Law > Child Support > Equitable Defenses > Laches**
We agree with the *Payne* Court that "[a]n infant who cannot legally bring suit . . . can scarcely be accused of lack of diligence." *Payne v. Prince George's Cnty. Dep't of Soc. Servs.*, 67 Md. App. 327, 338 (1986). We stop short of holding that laches may never be applied to a child support claim, and determine, instead, that the defense is generally not applicable. Our holding is in accord with Maryland precedent and the law of a majority of other jurisdictions.

**Family Law > Child Support > Equitable Defenses > Laches**
Parents who raise the laches defense—regardless of how long the delay—to bar *prospective* child support obligations may liken their prospects to a camel passing through the eye of a needle. Ultimately, child support is awarded *by the court* for the *benefit of the child[ren]. See Guidash v. Tome*, 211 Md. App. 725, 739 (2013) (holding that "parents may not waive or bargain away a child's right to receive support."). As we have explained, "the guiding principle in family law cases that involve children is the children's 'indefeasible right' to have their best interests fully considered, and the boundaries of a court's often broad discretion are tethered to the best interests of the child standard[.]" *Kaplan v. Kaplan*, 248 Md. App. 358, 387-88 (2020) (citations omitted). The parents of a minor child are "jointly and severally responsible for the child's support, care, nurture, welfare, and education." Maryland Code (1984, 2019 Repl. Vol.), Family Law Article, § 5-203(b)(1).

**Family Law > Child Support > Equitable Defenses > Laches > Application**
Any delay in bringing and adjudicating the underlying child support action could not have relieved Mr. Fludd of his continuing statutory duty to support his minor children until they reach the age of majority (or another qualifying event occurs) under Maryland Code (2014, 2019 Rep. Vol.), General Provisions Article , § 1-401.

**Family Law > Child Support > Continuing Jurisdiction Over Nonresidents > Application**

We conclude that Mr. Fludd's "obligation to pay child support . . . arose under the laws of this State," Maryland Code (1973, 2020 Repl. Vol.), Courts and Judicial Proceedings Article, § 6-103.1(2), and that he was given "reasonable notice and opportunity to be heard." *Glading v. Furman*, 282 Md. 200, 209 (1978). Accordingly, on December 15, 2020, the circuit court had continuing jurisdiction over Mr. Fludd in the child support case.

**Family Law > Child Support > Maryland's Uniform Interstate Family Support Act ("UIFSA") > Jurisdiction Over Nonresidents**

When evaluating whether "a Maryland court may exercise personal jurisdiction over a nonresident defendant" under the UIFSA, a court must consider: "(1) whether [the] long-arm statute has been satisfied; and (2) whether the exercise of jurisdiction comports with due process." *Friedetzky v. Hsia*, 223 Md. App. 723, 732 (2015) (citing *Bond v. Messerman*, 391 Md. 706, 721 (2006)). The UIFSA long-arm statute articulates seven potential bases on which a court may exercise personal jurisdiction over a nonresident defendant regarding a child support or paternity claim. Maryland Code (1984, 2019 Repl. Vol.), Family Law Article, § 10-304. The long-arm statute was written to be "as broad as constitutionally permissible." *Friedetzky*, 223 Md. App. at 743 (citing Unif. Interstate Family Support § 201 cmt., 9 U.L.A. Part IB, at 185).

**Family Law > Child Support > Maryland's Uniform Interstate Family Support Act ("UIFSA") > Jurisdiction Over Nonresidents > Application**

We hold that a trial court need only find one basis among the seven listed under the UIFSA long-arm statute in order to exercise jurisdiction over a nonresident defendant.

**Family Law > Child Support > Maryland's Uniform Interstate Family Support Act ("UIFSA") > Jurisdiction Over Nonresidents > Application**

We hold that Maryland Code (1984, 2019 Repl. Vol.), Family Law Article ("FL"), § 10-304(a)(2) was satisfied when Mr. Fludd filed a responsive pleading, entered a general appearance, and affirmatively requested relief from the court. Once Mr. Fludd submitted to the court's jurisdiction under FL § 10-304(a)(2), he could not "un-ring [the jurisdictional] bell." *Friedetzky v. Hsia*, 223 Md. App. 723, 747 (2015). Accordingly, the circuit court correctly determined that it was able to exercise jurisdiction over Mr. Fludd under the UIFSA long-arm statute.

Circuit Court for Montgomery County
Case No. 100281-FL

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1297

September Term, 2020

_____

ANTHONY FLUDD

v.

DONIELLE KIRKWOOD

_____

Arthur,
Leahy,
Eyler, Deborah S.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Leahy, J.

_____

Filed: December 16, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

For nearly a decade, the parents of the two children at the center of this case have been fighting over custody and child support, flooding the docket in the Circuit Court for Montgomery County with over 500 entries. The litigation began in January 2012, when Donielle Kirkwood, appellee, filed a complaint for custody against Anthony Fludd, appellant. At the time, Ms. Kirkwood was fleeing her relationship with Mr. Fludd, which, she claimed, had turned abusive.

The parties contested custody and visitation fiercely, cycling through various temporary arrangements. In December 2015, behind torrents of motions, the circuit court entered a final custody order awarding Ms. Kirkwood sole legal and physical custody of the parties' two children who, at the time, were both under five years old. To help manage the financial burden of raising the children, Ms. Kirkwood filed a motion for child support and other financial relief. Mr. Fludd responded. For unknown reasons, the circuit court did not rule on Ms. Kirkwood's motion for child support for several years.

Meanwhile, issuance of a final custody and visitation order did not decelerate Mr. Fludd's filings in the circuit court. To the contrary, in the months following entry of the final custody order, Mr. Fludd continued what the court had characterized as "abusive filing." Then the litigation storm quieted for a little over two years until Mr. Fludd filed a motion to modify child custody and visitation in September 2019.

At a hearing on the motion to modify, the circuit court appointed a child privilege attorney and counseled Mr. Fludd to resume therapy in the hopes of furthering the reunification process outlined in the 2015 child custody order. After the hearing, however, the circuit court was informed that Ms. Kirkwood and the children fled to Texas some

months earlier. Mr. Fludd had already notified the court, several years earlier, that he moved to Washington, D.C. Accordingly, on September 1, 2020, the court held a hearing on the issue of the court's continuing jurisdiction over the case.

Although the parties and the court agreed that the circuit court no longer had jurisdiction over the child custody issues, Ms. Kirkwood argued that the court retained jurisdiction over child support. On November 17, 2020, the court issued an order in which it found that Ms. Kirkwood had presented grounds establishing continued personal jurisdiction over Mr. Fludd on the matter of child support and related attorney's fees and costs under the long arm provisions of Maryland's Uniform Interstate Family Support Act ("UIFSA"), codified at Maryland Code (1984, 2019 Repl. Vol.), Family Law Article ("FL"), §§ 10-301-71. Following this determination, the court held a hearing over two days in early December on the merits of Ms. Kirkwood's 2016 motion for child support.

Ms. Kirkwood testified to her financial burdens as well as the abuse that Mr. Fludd inflicted on her. She professed that she was "scared to ask" for child support. The court issued a written order requiring that Mr. Fludd: (1) pay $2,101 per month in child support; (2) pay one calendar year of arrears, totaling $25,212.00; and (3) pay Ms. Kirkwood $8,000 in attorney's fees.

Mr. Fludd noted a timely appeal and presents two questions for our review, which

we have rephrased non-substantively for clarity:[1]

    I.       Does the doctrine of laches bar a trial court from considering a motion for child support filed four years earlier?

    II.     Does a trial court have personal jurisdiction over a nonresident parent to award child support?

We affirm the judgment of the circuit court. First, we hold that the doctrine of laches is generally inapplicable to child support claims. Second, we hold that in child support or paternity actions, the trial court need only find one basis among the seven listed under the UIFSA long-arm statute to exercise jurisdiction over a nonresident defendant.

## BACKGROUND

Mr. Fludd and Ms. Kirkwood are the natural parents of two minor children. In January 2012, Ms. Kirkwood filed a bill of complaint for custody of the parties' then-only child in the Circuit Court for Montgomery County. Weeks earlier, Ms. Kirkwood also filed for a temporary protective order in the District Court of Maryland for Montgomery County. On May 23, 2012, Mr. Fludd filed an answer to the custody complaint along with a counter-complaint for custody.

The parties initially entered into a consent order in the circuit court under which they shared legal custody and Ms. Kirkwood had primary physical custody. Just three days

---

[1] Mr. Fludd presented the questions in his brief as follows:

"1. Whether the doctrine of laches barred a trial court from considering a motion for child support that had not been considered for over four years, and there is inexcusable delay and prejudice as a result of that delay?

2. Whether the trial court has personal jurisdiction over a nonresident parent to award child support?"

after the consent order was entered on June 19, 2012, Mr. Fludd filed a motion to modify—

the first in a long series of filings. Following numerous motions and hearings, in December

2015, the circuit court entered a final custody order awarding Ms. Kirkwood sole legal and

physical custody of the parties' two children.[2] The custody order specified that Mr. Fludd

was to have no contact with Ms. Kirkwood or the children[3] and instructed that, "due to the

abusive filing" by Mr. Fludd, he was "prohibited from filing any charges against [Ms.

Kirkwood] with any commissioner anywhere in the State of Maryland." Instead, Mr. Fludd

was "limited to filing charges directly with the police or the State's Attorney's Office."[4]

Still, the order articulated a reunification process which outlined, among other things, the

steps that Mr. Fludd must take before he is eligible for visitation and custody.

In September 2016, Ms. Kirkwood filed a "Motion For Child Support and Other

Financial Relief and Request for Hearing." (Capitalization omitted). Later the same

month, Mr. Fludd filed a response arguing that the portion of his disability payments

---

[2] The record reveals that after Ms. Kirkwood had filed her initial complaint for custody, she conceived a second child by Mr. Fludd. The second child was born on June 28, 2013.

[3] Ms. Kirkwood had already obtained a final protective order against Mr. Fludd on December 19, 2014 in District Court Case No. 0602SP050122014. That order noted the "long history of violence/abuse between [the] parties" and ordered, among other things, that Mr. Fludd not abuse, threaten or harass Ms. Kirkwood and the children and to stay away from Ms. Kirkwood and the children, as well as the children's childcare providers.

[4] Ms. Kirkwood alleges in her brief that Mr. Fludd's abuse of her "extended beyond physical abuse, to include, cyberstalking, abuse of process and false imprisonment." By January 2015, Ms. Kirkwood was living with her children in a domestic violence shelter.

directed to Ms. Kirkwood constituted child support.[5]  Further, Mr. Fludd asked the court to enter a judgment in his favor awarding "fees incurred in this matter" and "[s]uch other relief this [c]ourt deems appropriate."  However, as discussed below, the issue of child support was not ultimately decided until December 15, 2020.

Four years after the motion for child support was filed, Mr. Fludd wrote to Ms. Kirkwood's counsel requesting that the reunification process, as outlined in the 2015 custody award, proceed.  In his letter, Mr. Fludd asked for an update as to the children's "court ordered activities," as the completion of these activities, he claimed, had been a "barrier for the reunification process."  Mr. Fludd also noted that he hoped to "prevent unnecessary pleadings, legal fees, or court fees" by having the "opportunity to discuss the status of [the] case" and "speak frankly about mutually resolving [the] matter."  In response, Ms. Kirkwood's counsel advised that the children were "still in need of further therapy" and that if Mr. Fludd wished to progress in the reunification process, he should "request a modification through the court."

On September 26, 2019, Mr. Fludd filed a motion to modify custody and visitation. He asserted that he had "not seen or spoken with the minor children since January 16,

---

[5] Neither Ms. Kirkwood's initial motion for child support nor Mr. Fludd's response were included in the record extract.  While we have reviewed the original record for the purposes of this opinion, we encourage future litigants to follow Maryland Rule 8-501(c)'s instruction to provide "all parts of the record that are reasonably necessary for the determination of the questions presented by the appeal or cross-appeal." *See also Motor Vehicle Admin. v. Geppert*, 470 Md. 28, 39 n.7 (2020) ("We [] note that future litigants will earn the undying appreciation of an appellate court if they can successfully consolidate relevant materials from the record in an agreed-upon record extract, as encouraged by Maryland Rule 8-501.").

2015"; that all protective orders had expired; that no cases were pending between Mr. Fludd and Ms. Kirkwood or the children; and that the children had "completed all court ordered activities."

The circuit court held a hearing on Mr. Fludd's motion on January 17, 2020.[6] Ms. Kirkwood was represented by counsel and was not present at the hearing. The purpose of the hearing was to establish a framework by which the reunification process could continue. The court counseled both parties to continue therapy and appointed a child privilege attorney to work through waiver of the children's patient-therapist privilege.

On August 5, 2020, Ms. Kirkwood filed a motion requesting a hearing on the still-pending motion for child support and attorney's fees. In the motion, Ms. Kirkwood alleged that Mr. Fludd was currently employed, and that she "has not received child support from [Mr. Fludd], if ever," since prior to the filing of her motion for child support in 2016. Ms. Kirkwood requested the court order Mr. Fludd to provide her with, among other things: a copy of his tax returns for the prior three years; child support arrearages dating back to 2016; and attorney's fees incurred over the prior four years.

### A.    Jurisdiction Over Child Custody Issues

Although the record before us does not convey when exactly Ms. Kirkwood and the

---

[6]Although Mr. Fludd captioned his filing as a motion to modify, given that Mr. Fludd was arguing that he had completed the steps necessary to proceed with the reunification process as set out in the child custody order, the circuit court recaptioned the filing as a motion to enforce the order.

children relocated to Texas or when that fact was revealed to the court,[7] on August 19, 2020, the circuit court entered an order requesting counsel to submit briefs outlining their arguments on whether the Circuit Court for Montgomery County retained exclusive, continuing jurisdiction over matters concerning custody of the children.

The court held a hearing on the issue on September 1, 2020. The parties and the judge agreed that the Circuit Court for Montgomery County was divested of exclusive continuing jurisdiction over the child custody issues in the case under the Maryland Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Maryland Code (1984, 2019 Repl. Vol.), Family Law Article ("FL"), §§ 9.5-101-318. This ruling was memorialized in a written order on September 9, 2020. Ms. Kirkwood's counsel raised the issue of her client's pending motion for child support, asserting that the circuit court retained jurisdiction over these matters. The court deferred ruling on the issue and requested additional briefing from the parties.

### B. Jurisdiction Over Child Support Issues

As requested, in October 2020, Mr. Fludd and Ms. Kirkwood filed legal memoranda regarding the court's continuing jurisdiction over child support. Invoking Maryland Code (1973, 2020 Repl. Vol.), Courts and Judicial Proceedings Article ("CJP"), § 6-103.1, Mr. Fludd argued that the circuit court did not have personal jurisdiction over him because the "case was filed as a [c]omplaint for custody," and that complaint was dismissed by the court on September 9th. Correspondingly, he claimed that the circuit court lacked

---

[7] At the hearing on September 1, 2020, Mr. Fludd stated that he found out months earlier, in February 2020, that Ms. Kirkwood had moved with the children to Texas.

jurisdiction to issue an initial support determination under UIFSA sections 10-304 and 10-307.  Additionally, Mr. Fludd argued that Texas had become the more convenient forum to litigate the dispute.

Ms. Kirkwood responded that the circuit court did retain personal and subject matter jurisdiction over the pending child support issues under the long-arm provision of the UIFSA.  She contended that Mr. Fludd had: (1) submitted to the circuit court's jurisdiction under FL § 10-304(a)(2) by filing a responsive pleading to her motion for child support; (2) triggered FL § 10-304(a)(6) by engaging in sexual intercourse with Ms. Kirkwood in Maryland; and (3) met the requirements for personal jurisdiction under a minimum contacts analysis by "'purposefully avail[ing] himself to the jurisdiction of [the] court by making the choice to seek relief, including relief related to child support and financial matters, by and through his various and multiple filings requesting such relief."  Ms. Kirkwood also posited that, if the circuit court were to determine it had jurisdiction over the child support matters, it also had jurisdiction over the award of attorney's fees under FL § 12-103(a).[8]

---

[8] FL § 12-103(a) states:

The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:
  (1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or
  (2) files any form of proceeding:
      (i) to recover arrearages of child support;
      (ii) to enforce a decree of child support; or
      (iii) to enforce a decree of custody or visitation.

8

In further support of her argument, Ms. Kirkwood offered that the UCCJEA—the statute that divested the court of jurisdiction over custody matters—specifies in its definition section that it "does not include an order relating to child support[.]" FL § 9.5-101(d)(3). Even if the court was not convinced of these grounds, Ms. Kirkwood noted that, in her view, Mr. Fludd had waived any right to challenge personal jurisdiction when he failed to raise the issue in his 2016 response to her motion for child support. Finally, Ms. Kirkwood posited that the court had subject matter jurisdiction as she was a resident of Montgomery County at the time she filed her initial child support motion and that the circuit court was "the highest common-law and equity court[] of record exercising original jurisdiction."

During oral argument, Mr. Fludd repeated the arguments contained in his memorandum. He also represented that the Texas child support case had been scheduled for a hearing, and, since the custody matters had been transferred to Texas, it was the proper forum to litigate the child support case as well. Counsel for Ms. Kirkwood charged Mr. Fludd with having filed the duplicate action "for the purposes of confusing the issues here." She urged the court to retain jurisdiction over the matter because it had been four years since she first requested child support and a Texas court would not be able to assess the accrued arrears and attorney's fees.

Mr. Fludd also challenged Ms. Kirkwood's argument that under FL § 10-304(a)(6) Maryland retained jurisdiction over him because he did not agree that the children were conceived in Maryland. Ms. Kirkwood testified in response that Mr. Fludd was the father

9

of the two children for which she was seeking support and that both children were conceived in Montgomery County, Maryland.

On November 17, 2020, the judge issued a written order finding several bases for the Circuit Court for Montgomery County's continuing exercise of jurisdiction over the child support case under the UIFSA long-arm statute, FL § 10-304(a). The court found that Mr. Fludd submitted to jurisdiction by "ma[king] a general appearance defending against the motion for Child Support, Attorney Fees, and Costs." Additionally, the court found that Mr. Fludd had submitted to the court's jurisdiction by "filing a responsive pleading" to Ms. Kirkwood's initial child support motion. Finally, the judge credited Ms. Kirkwood's testimony that the children were conceived when she had sexual intercourse with Mr. Fludd in Maryland. The court then set the matter in for a merits hearing on December 2, 2020.

At the hearing, Ms. Kirkwood testified that she had not received any monetary support or health insurance assistance for the children since she first requested child support in September 2016. She also testified that she was "scared to ask" for child support. She related, for example, that Mr. Fludd had disabled her car after she initially requested child support. More fearsome, she said, was Mr. Fludd's threat to kill her or kill their children if she ever pursued child support. The court admitted several documents offered through Ms. Kirkwood's testimony relating to the parties' incomes and Ms. Kirkwood's medical and childcare expenses. Additionally, the court received documents offered to establish Ms. Kirkwood's attorney's fees in the amount of $22,180.60.

Mr. Fludd testified on his own behalf. He noted that he had an ongoing medical condition that would greatly affect his income potential. He also related that he tried to keep the matter out of court by offering support for the children but that those offers were all rejected by Ms. Kirkwood. Mr. Fludd described his financial burdens, including his obligation to pay private school tuition for a child not in common with Ms. Kirkwood.

The court heard closing arguments in the matter on December 3, 2020. The next day, the judge dictated an oral ruling. Finding no reason to deviate from the Guidelines,[9] the court ordered Mr. Fludd to pay $2,101 per month in child support, effective January 1, 2021. The court further ordered Mr. Fludd to pay arrears for calendar year 2020 totaling $25,212.00. While acknowledging that "in many ways" the ruling was a "windfall for Mr. Fludd" because it did not require that he pay arrears dating back to 2016, the judge explained that, given Mr. Fludd's financial hardships, he wanted to ensure that Mr. Fludd was "able to make these payments" and that "these kids receive it." Finally, the court ordered that Mr. Fludd pay $8,000 in attorney's fees. The court issued a written order memorializing these terms on December 15, 2020. Mr. Fludd noted a timely appeal on January 13, 2021.

---

[9] "The calculation of a child support award is governed by FL § 12-204. The statute includes a schedule for the calculation of child support, commonly referred to as the 'Guidelines,' when the parties' combined adjusted actual income ranges from $15,000 to $180,000." *Kaplan v. Kaplan*, 248 Md. App. 358, 386 (2020).

11

# DISCUSSION

## I.

## Laches

### A.      An Afterthought

Although the defense of laches was not raised before the circuit court, Mr. Fludd now contends that that court was barred from considering the motion for child support under the equitable doctrine of laches.  He claims that laches was established, *first*, by the court's four-year "inexcusable delay" in considering Ms. Kirkwood's motion; and *second*, by the "obvious prejudice" inflicted upon him by the order to pay child support arrears, which was "further exacerbated by the trial court's award of [attorney's] fees."

Ms. Kirkwood counters that she "did not delay in exercising her rights" and that Mr. Fludd "was not prejudiced by the trial court's delay."  She submits that she "promptly asserted her children's rights to establish child support" by filing her motion on September 16, 2016.  Moreover, Ms. Kirkwood refutes both the contention that the delay was sufficient to constitute laches and the assertion that Mr. Fludd suffered prejudice by pointing out that Mr. Fludd has an ongoing statutory duty to provide support for his minor children until they reach the age of majority.  Ms. Kirkwood avers that Mr. Fludd "has neither provided any evidence demonstrating that he changed his position, relying on the belief that [Ms. Kirkwood] would not pursue a child support award, nor asserted that he lost evidence that would support his position that the trial court did not have jurisdiction to issue a child support award."

12

We note, with some degree of irony, that although the basis of Mr. Fludd's laches defense is the court's delay in hearing the motion for child support, he failed to raise the doctrine of laches until this appeal. Nevertheless, equitable defenses allow a court to decline relief "for a stale claim after the facts are fully developed[.]" *Balt. Cnty. v. Glendale Corp.*, 219 Md. 465, 468 (1959). Therefore, even if not pled or argued, the defense of laches can "be invoked by a court on its own initiative" when "equity demands." *State Center, LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 584-85 (2014) (citation omitted). Here, we choose to evaluate Mr. Fludd's laches argument not because we think it has merit, but rather, because we think that it has none. We explain.

## B.    Analysis

The question of whether laches bars an action presents a mixed question of law and fact. *Anderson v. Great Bay Solar I, LLC*, 243 Md. App. 557, 611 (2019), *cert. denied sub nom. Bd. of Comm'rs of Somerset Cnty. v. Anderson*, 468 Md. 224 (2020) (citation omitted). Whether "the elements of laches have been established" is a question of fact. *Liddy v. Lamone*, 398 Md. 233, 245 (2007). However, "the question of whether in view of the established facts, laches should be invoked, is a question of law." *Id.* at 246.

Our Court of Appeals has observed that laches is "an ancient defense in equity against stale claims," *Fraternal Ord. of Police v. Montgomery Cnty.*, 446 Md. 490, 509 (2016), and "is based upon grounds of sound public policy by discouraging fusty demands for the peace of society," *Ross v. State Bd. of Elections*, 387 Md. 649, 668 (2005) (quoting *Parker v. Bd. of Election Supervisors*, 230 Md. 126, 130 (1962)). *See also Buxton v. Buxton*, 363 Md. 634, 645 (2001) ("[T]he word ['laches'], itself, derives from the old

13

French word for laxness or negligence."). This defense "applies when there is an unreasonable delay in the assertion of one's rights and that delay results in prejudice to the opposing party." *Liddy*, 398 Md. at 244 (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 117 (2000)). When evaluating whether a delay was reasonable, we look to whether the party bringing the claim exercised "reasonable diligence" in asserting their rights. *State Ctr., LLC*, 438 Md. at 610 (quoting *Hall v. Clagett*, 48 Md. 223, 243-44 (1878)). What constitutes prejudice in this context "depends upon the facts and circumstances of each case, but it is generally held to be anything that places [a defendant] in a less favorable position." *Parker*, 230 Md. at 130-31.

In the instant case, the complaint for custody was filed in 2012, the initial motion for child support was filed in 2016, and the hearing on the motion for child support occurred in 2020. Mr. Fludd focuses his laches claim not on the four years between the filing of the custody complaint and the initial claim for child support, but rather, on the four years that elapsed between the date the initial child support claim was filed and the court's hearing on the claim. Mr. Fludd's argument misses the mark because laches bars "the right *to assert a claim* after the passage of time[.]" *Parker*, 230 Md. at 130 (emphasis added). Here, Mr. Fludd challenges a delay that occurred *after* Ms. Kirkwood asserted her child support claim. Moreover, as we next explain, the doctrine of laches is generally inapplicable to child support claims.

The nature and purpose of some claims dictate that laches will rarely, if ever, apply. For example, the Court of Appeals has, for decades, "expressed doubt about the applicability of the laches defense in attorney grievance proceedings." *Att'y Grievance*

14

*Comm'n v. Goldsborough*, 330 Md. 342, 356 (1993). This reservation emanates from the underlying purpose of attorney grievance proceedings, which is to "protect the public." *Att'y Grievance Comm'n v. Kahn*, 290 Md. 654, 684 (1981). Given that the claim is designed to protect the public, "dismissal of [a] disciplinary petition for the sole reason that the Attorney Grievance Commission failed to proceed with the proper dispatch [would be] manifestly unwarranted." *Id.* The Court of Appeals recently clarified that "with the possible exception of cases involving both extraordinary circumstances of delay and actual prejudice resulting in a clear due process violation, applying the doctrine of laches to attorney discipline proceedings would not be consistent with the goal of such proceedings[.]" *Att'y Grievance Comm'n v. Cassilly*, 476 Md. 309, 348, Misc. AG No. 31, September Term 2020 (filed Oct. 22, 2021). Considering the purpose of child support and child support arrears claims, this Court has similarly questioned whether the defense of laches is available to bar recovery.

In *Payne v. Prince George's County Department of Social Services*, the Department filed a paternity action against Mr. Payne approximately four years after his child was born. 67 Md. App. 327, 329-32 (1986). The Department's petition requested that the court order Mr. Payne to pay for the mother's childbirth costs and to pay support for the child. *Id.* at 329. About a year and a half after the action was filed, Mr. Payne responded, arguing, among other things, that the proceeding was barred by laches. *Id.* at 330. The circuit court determined that Mr. Payne was the child's father and, after finding that laches and a statute of limitations were not applicable to child support cases, ordered that he pay $834 in child support arrears. *Id.* at 331.

15

In evaluating Mr. Payne's laches argument on appeal, our predecessors noted: "Whether laches applies at all in a paternity proceeding for child support may be questioned. An infant who cannot legally bring suit himself or herself can scarcely be accused of lack of diligence." *Id.* at 338. Nevertheless, the *Payne* Court "assum[ed]" that the doctrine of laches applied and considered "whether there is any indication on this record of prejudice" to the appellant. *Id.* The Court concluded that appellant's counsel "proffered nothing that would remotely suggest delay-caused prejudice" to the appellant. *Id.* at 339.

Similarly, in *Bland v. Larsen*, we were asked to decide the applicability of laches to a child support arrearage action brought fifteen years after the original custody order was entered. 97 Md. App. 125, 132 (1993). There, we "[a]ssum[ed], without deciding, that the doctrine of laches may be applied as a defense in an action based on arrearages of child support payments[.]" *Id.* Accordingly, we considered the appellant's allegations of prejudice and held "that, under the circumstances of this case, the court did not err when it refused to apply the doctrine." *Id.* at 133. Specifically, we noted that the appellant "did not testify that he remarried and had additional children *because of* [the appellee]'s inaction" and that "[a]ny inability to prove payments is due entirely to [the appellant]'s noncompliance with the court order." *Id.* at 133-34.

Notwithstanding the contours of the doctrine of laches as applied to civil actions generally, we see that the propriety of applying laches to child support arrearage claims is narrow. Moreover, parents who raise the defense—regardless of how long the delay—to bar *prospective* child support obligations may liken their prospects to a camel passing

16

through the eye of a needle.[10]  Ultimately, child support is awarded *by the court* for the

*benefit of the child[ren]*.  *See Guidash v. Tome*, 211 Md. App. 725, 739 (2013) (holding

that "parents may not waive or bargain away a child's right to receive support.").  As we

have explained, "the guiding principle in family law cases that involve children is the

children's 'indefeasible right' to have their best interests fully considered, and the

boundaries of a court's often broad discretion are tethered to the best interests of the child

standard[.]"  *Kaplan v. Kaplan*, 248 Md. App. 358, 387-88 (2020) (citations omitted).  The

---

[10] The aphorism involving an "eye of a needle" is frequently used by judges and legal commentators to describe exceedingly narrow openings in the law.  *See State v. Wickes*, 910 N.W.2d 554, 577 (Iowa 2018) (Appel, J., concurring) ("The unique features of the case, however, were not intended to be and cannot be converted into a narrow, mandatory set of criteria through which a case must pass through, like a camel through the eye of a needle, to give rise to an as-applied challenge based on cruel and unusual punishment."); *United States v. Glecier*, 923 F.2d 496, 503 (7th Cir. 1991) ("Appellants who challenge evidentiary rulings of the district court are like rich men who wish to enter the Kingdom; their prospects compare with those of camels who wish to pass through the eye of a needle."); Simon Sobeloff, *The Law of Business in the United States*, 34 Or. L. Rev. 145, 150-51 (1955) (The Supreme Court's "jurisdiction is almost all together discretionary and it is almost, though not quite, as difficult to get into that tribunal as, according to the Bible, it is for a camel to go through the eye of the needle[.]").

The phrase has a long and storied history, appearing first in each of the Synoptic Gospels, Matthew 19:24, Mark 10:25, and Luke 18:25, where it is written that "[i]t is easier for a camel to go through the eye of a needle, than for a rich man to enter into the kingdom of God."  Matthew 19:24 (King James).  Emory University theology professor Fred Craddock described the phrase as "a proverb about the humanly impossible."  Fred B. Craddock, Interpretation: Luke (1990).  The Babylonian Talmud contains a similar reference to an "elephant going through the eye of a needle."  Babylonian Talmud, Berakhot 55b.  The theologian Louis Jacobs explained that the "substitution of elephant in the popular proverb was no doubt due to the fact that this animal was far more frequently found in Babylon."  Benjamin Williams, *Gnats, Fleas, Flies, and a Camel*, 107 Jewish Q. Rev. 157, 160 n.9 (2017) (quotation omitted).  In both instances, "[t]he adage conveys its meaning by invoking the size of the largest animal familiar to Palestinian or Babylonian audiences."  *Id.* at 160.  The Qur'an forecasts that disbelievers will not enter paradise "until a camel passes through the eye of a needle."  Qur'an 7:40.

parents of a minor child are "jointly and severally responsible for the child's support, care, nurture, welfare, and education." FL § 5-203(b)(1). This obligation *continues* until the child reaches the age of majority, or, if the child reaches the age of majority and is still enrolled in secondary school, the obligation continues until one of the following events occurs:

> (1) the individual dies;
> (2) the individual marries;
> (3) the individual is emancipated;
> (4) the individual graduates from or is no longer enrolled in secondary
>     school; or
> (5) the individual attains the age of 19 years.

Maryland Code (2014, 2019 Repl. Vol.), General Provisions Article ("GP"), § 1-401.

When determining the appropriateness of applying laches to a child support action, courts must consider the best interest of the child and the parents' *continuing* duty to "support" and "care" for the child. A full century ago, the Court of Appeals recognized that the failure of a mother to include a claim for child support in the original divorce decree did not bar mother's claim for child support years later, for a contrary result would have been "opposed to a sound and just regard for the interest of society and the welfare of the children, who, while not parties to the proceeding, are nevertheless profoundly affected by its result." *Boggs v. Boggs*, 138 Md. 422, 429 (1921).

In light of these precepts, and keeping in mind that laches is a defense premised on "laxness" or "negligence," *Buxton*, 363 Md. at 645, we strain to envision a case, considering the unreasonableness of any delay and accrued prejudice to the parent, in which laches would bar a child support claim. We agree with the *Payne* Court that "[a]n

18

infant who cannot legally bring suit . . . can scarcely be accused of lack of diligence." 67

Md. App. at 338. We stop short of holding that laches may never be applied to a child

support claim, and determine, instead, that the defense is generally not applicable. Our

holding is in accord with Maryland precedent and the law of a majority of other

jurisdictions. We have identified 33 states, and the District of Columbia, that have

expressly addressed this issue. Of those jurisdictions, 28 have held that laches is either

heavily disfavored or completely unavailable in actions for child support or child support

arrears. [11]

---

[11] A majority of states have held that laches is disfavored or unavailable in actions for child support or child support arrears. *See Mills v. Dailey*, 38 So.3d 731, 736 (Ala. Civ. App. 2008); *State, Dep't of Revenue, Child Support Enf't Div. ex rel. Valdez v. Valdez*, 941 P.2d 144, 152 (Alaska 1997); *In re Marriage of Fellows*, 138 P.3d 200, 201 (Cal. 2006); *In re Marriage of Johnson*, 380 P.3d 150, 154-56 (Colo. 2016); *Holmes v. Wooley*, 792 A.2d 1018, 1023 (Del. Super. Ct. 2001); *Logan v. Logan*, 920 So. 2d 796, 798 (Fl. Dist. Ct. App. 2006); *Wynn v. Craven*, 799 S.E.2d 172, 173 (Ga. 2017); *State, Dep't of Health & Welfare ex rel. State of Wash. ex rel. Nicklaus v. Annen*, 889 P.2d 720, 722 (Idaho 1995); *Knaus v. York*, 586 N.E.2d 909, 914 (Ind. Ct. App. 1992); *Strecker v. Wilkinson*, 552 P.2d 979, 984-85 (Kan. 1976); *Holmes v. Burke*, 462 S.W.2d 915, 918 (Ky. Ct. App. 1971); *Gambino v. Gambino*, 396 So.2d 434, 438 (La. Ct. App. 1981); *Dunwoody v. Dunwoody*, 155 A.3d 422, 425 (Me. 2017); *Child Support Enf't Div. of Alaska v. Brenckle*, 675 N.E.2d 390, 396-97 (Mass. 1997); *In re Marriage of Opp*, 516 N.W.2d 193, 196-97 (Minn. Ct. App. 1994); *Miss. Dep't of Human Servs. v. Molden*, 644 So.2d 1230, 1234 (Miss. 1994); *Pfeifer v. Pfeifer*, 301 P.3d 821, 823 (Mont. 2013); *In re Estate of DeLara*, 38 P.3d 198, 202 (N.M. Ct. App. 2001); *Napowsa v. Langston*, 381 S.E.2d 882, 887 (N.C. Ct. App. 1989); *Patten v. Vose*, 590 A.2d 1307, 1309-10 (Pa. Super. 1991); *Ables v. Gladden*, 664 S.E.2d 442, 445-46 (S.C. 2008); *Tovsland v. Reub*, 686 N.W.2d 392, 402-03 (S.D. 2004); *Tex. Att'y Gen. v. Daurbigny*, 702 S.W.2d 298, 300-01 (Tex. App. 1985); *Lyon v. Lyon*, 466 A.2d 1186, 1188-89 (Vt. 1983); *Taylor v. Taylor*, 418 S.E.2d 900, 902 (Va. Ct. App. 1992); *Robinson v. McKinney*, 432 S.E.2d 543, 546 (W. Va. 1993); *Paterson v. Paterson*, 242 N.W.2d 907, 910 (Wis. 1976); *Hammond v. Hammond*, 14 P.3d 199, 201-03 (Wyo. 2000).

A minority of states do permit the use of laches in actions for child support or child support arrears. *See Chitwood v. Chitwood*, 211 S.W.3d 547, 552 (Ark. Ct. App. 2005)

(Continued)

19

Here, child support was ordered for the benefit of Mr. Fludd's minor children. At the child support hearing, Ms. Kirkwood testified to the expenses that she incurred as the sole provider for the children. The circuit court's ruling makes clear that the support and arrears were being awarded for "the benefit of the children." Any delay in bringing and adjudicating the underlying child support action could not have relieved Mr. Fludd of his continuing statutory duty to support his minor children until they reach the age of majority (or another qualifying event occurs) under GP § 1-401. Accordingly, we hold that the trial court was not barred by the defense of laches from entering the order awarding child support and attorney's fees in this case.

## II.

### Jurisdiction of Child Support and Other Financial Matters

### A. Parties' Contentions

Returning to the jurisdictional argument that he presented in the Circuit Court for Montgomery County, Mr. Fludd contends that "[t]he trial court should have considered the

("[E]nforcement of child-support judgments are treated the same as enforcement of other judgments, and a child-support judgment is subject to the equitable defenses that apply to all other judgments."); *Fromm v. Fromm*, 948 A.2d 328, 333, 335 (Conn. App. Ct. 2008) (holding that laches is available as a defense to child support actions, and finding the plaintiff guilty of laches); *Padgett v. Padgett*, 472 A.2d 849, 850, 852 (D.C. 1984) (holding "that laches is applicable generally to cases involving arrearages in court-ordered support payments"); *Merritt v. Merritt*, 73 P.3d 878, 881-82 (Okla. 2003) ("[E]quitable defenses may be invoked to bar the recovery of delinquent child support payments. . . . includ[ing] the equitable doctrines of waiver, estoppel and laches."); *Veysey v. Veysey*, 339 P.3d 131, 136, 136 n.6 (Utah Ct. App. 2014) (rejecting an argument that laches is inapplicable to child support claims, because a state statute precluded the defenses of waiver and estoppel but was silent about laches); *In re Marriage of Capetillo*, 932 P.2d 691, 693 (Wash. Ct. App. 1997) ("In Washington, the equitable defense of laches may be applied to estop a custodial parent from recovering past-due child support.").

20

current status of the parties" instead of considering only facts that "occurred prior to the filing of [Ms. Kirkwood's] 2016 Motion for Child Support[.]" Mr. Fludd also avers that the circuit court failed to consider several bases for the exercise of jurisdiction in Maryland set out in FL § 10-304(a). It appears that Mr. Fludd reads the long-arm statute to require that courts consider all seven bases for jurisdiction and determine whether a majority of those bases have been satisfied. Specifically, he points out that § 10-304(a)(3) was not satisfied as he did not reside in Maryland with the children; § 10-304(a)(4) was not satisfied as he "did not reside in the State, and did not provide . . . support for the child"; and § 10-304(a)(5) was not satisfied as the children do not live outside of Maryland as a "result of the acts or directives of the individual."

In response, Ms. Kirkwood contends that the circuit court did not err in finding that it had personal jurisdiction over Mr. Fludd for child support and attorney's fees. She avers that under FL § 10-304(a), the circuit court could invoke jurisdiction after an affirmative finding on any of the seven articulated bases. Ms. Kirkwood argues that the court properly found that Mr. Fludd "made a general appearance and filed a responsive pleading to [her] Motion for Child Support . . . pursuant to § 10-304(a)(2)." In her view, the circuit court also properly found that Mr. Fludd had engaged in sexual intercourse with her in Maryland and that their children may have been conceived from those acts, satisfying § 10-304(a)(7).

### B. Analysis

Mr. Fludd's principal challenge on appeal is to the circuit court's exercise of jurisdiction over the child support case under the UISFA long-arm statute. We examined the statute in *Friedetzky v. Hsia*, 223 Md. App. 723, 733-736, 742-47 (2015), and draw

extensively from that opinion in our analysis here. Circumstances presented in the instant

case, however, allow us to begin our analysis with the doctrine of continuing jurisdiction—

here, under CJP § 6-103.1—and then determine whether jurisdiction over the case in

Maryland may continue under the UISFA long-arm statute.

## CJP § 6-103.1

We begin our two-step analysis with Maryland's statute governing jurisdiction over

nonresidents relating to child support, spousal support, or counsel fees:

> A court may exercise personal jurisdiction over a nonresident defendant in any civil proceeding arising out of the marital relationship or involving a demand for child support, spousal support, or counsel fees if the plaintiff resides in this State at the time suit is filed and the nonresident defendant has been personally served with process in accordance with the Maryland Rules and:
> (1) This State was the matrimonial domicile of the parties immediately before their separation; or
> (2) The obligation to pay child support, spousal support, or counsel fees arose under the laws of this State or under an agreement executed by one of the parties in this State.

CJP § 6-103.1. We observe that CJP § 6-103.1 is permissive rather than exclusive;

meaning, that a court *may* exercise personal jurisdiction if the provisions are satisfied, but

personal jurisdiction is not necessarily precluded if its provisions are not satisfied. *See*

*Friedetzky*, 223 Md. App. at 744 n.17. In *Friedetzky*, we examined, briefly, the doctrine

of continuing jurisdiction, which, we explained,

> stands for the proposition that when a state obtains personal jurisdiction over a party in an action, **that jurisdiction continues throughout all subsequent proceedings that arise out of the original cause of action, even if one of the parties moves out of state in the interim**. [*Glading v. Furman,* 282 Md. 200, 204 (1978)] (quoting Restatement (Second) of Conflict of Laws § 26 (1971)) (quotation marks omitted). The doctrine is rooted in the rationale that without continuing jurisdiction, a court may not ever be able to render a

22

> final judgment if one of the parties, despite being properly served within Maryland, then removes himself or herself "while proceedings arising out of the original cause of action yet remained to be resolved." *Id. Existing* personal jurisdiction is a necessary component to the *continuing* jurisdiction doctrine.

*Id.* at 747-48 (bold emphasis added) (italics in original). In applying the continuing jurisdiction rule, the nonresident defendant, over whom personal jurisdiction has been initially obtained, must "be given reasonable notice and opportunity to be heard in each subsequent proceeding if an in personam decree is to be rendered against him." *Glading*, 282 Md. at 209. The continuing jurisdiction doctrine did not apply in *Friedetzky* because "Appellee did not live in Maryland, was not served in Maryland, and the Maryland courts did not obtain personal jurisdiction over Appellee in any prior proceeding." *Friedetzky*, 223 Md. App. at 748.

Unlike the appellee in *Friedetzky*, Mr. Fludd lived in Maryland when the complaint for custody was filed in 2012. He then answered and vigorously contested the relief requested, even after he later moved to the District of Columbia. The 500+ docket entries reveal that he filed numerous motions and pleadings for affirmative relief. Most significantly, Mr. Fludd filed a response to Ms. Kirkwood's motion for child support in 2016. In that response, he asked the court to enter a judgment in his favor awarding him "fees incurred in this matter." He also requested that the court order Ms. Kirkwood to "complete an Abuser Intervention Program" and "pay for half the expenses for reunification therapy." Although the court did not rule on the motion until December 15, 2020, it did so only after Mr. Fludd was given the opportunity to submit memoranda and to be heard over three hearings on three separate dates.

23

We conclude that Mr. Fludd's "obligation to pay child support . . . arose under the laws of this State," CJP § 6-103.1(2), and that he was given "reasonable notice and opportunity to be heard," *Glading,* 282 Md. at 209.  Accordingly, on December 15, 2020, the circuit court had continuing jurisdiction over Mr. Fludd in the child support case.

### UIFSA Long-Arm
### FL § 10-304

Maryland adopted the UIFSA in 1997.  *Friedetzky,* 223 Md. App. at 735 n.12.  This statutory scheme establishes "procedural and jurisdictional rules for interstate child support proceedings," *Superior Court v. Ricketts*, 153 Md. App. 281, 319 (2003), but "does not address custody," *Friedetzky*, 223 Md. App. at 735.  The UIFSA seeks to eliminate "the problems stemming from multiple child support orders issued by different states relating to one child and does so by implementing a 'one-order system' whereby only one state's order governs the support obligation at any given time." *Id.* (citing *Ricketts*, 153 Md. App. at 318-19).

When evaluating whether "a Maryland court may exercise personal jurisdiction over a non-resident defendant" under the UIFSA, a court must consider: "(1) whether [the] long-arm statute has been satisfied; and (2) whether the exercise of jurisdiction comports with due process." *Id.* at 732 (citing *Bond v. Messerman*, 391 Md. 706, 721 (2006)).  The UIFSA long-arm statute articulates seven potential bases on which a court may exercise personal jurisdiction over a nonresident defendant regarding a child support or paternity claim:

> (a) In a proceeding to *establish* or *enforce a support order or to determine parentage of a child*, a tribunal of this State may exercise personal jurisdiction over a nonresident individual . . . if:

24

(1) the individual is personally served within this State;

(2) *the individual submits to the jurisdiction of this State by consent in a record, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction*;

(3) the individual resided with the child in this State;

(4) the individual resided in this State and provided prenatal expenses or support for the child;

(5) the child resides in this State as a result of the acts or directives of the individual;

(6) *the individual engaged in sexual intercourse in this State and the child may have been conceived by that act of intercourse*; or

(7) there is any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction.

FL § 10-304 (emphasis added). This language was written to be "as broad as constitutionally permissible." *Friedetzky*, 223 Md. App. at 743 (citing Unif. Interstate Family Support § 201 cmt., 9 U.L.A. Part IB, at 185). When interpreting a statute, we assume "that the [L]egislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute[.]" *Philips v. State*, 451 Md. 180, 196 (2017). Here, the bases for exercising jurisdiction under the UIFSA's long-arm statute—FL §10-304—are separated by semi-colons and, finally, the conjunction "or," which is "[u]sed to indicate an alternative[.]" *SVF Riva Annapolis, LLC v. Gilroy*, 459 Md. 632, 642 (2018) (quoting The American Heritage Dictionary of the English Language 1236 (4th ed. 2006)). "Maryland courts have interpreted 'or' consistently with its disjunctive meaning." *Id.* Accordingly, we hold that a trial court need only find one

25

basis among the seven listed under the UIFSA long-arm statute in order to exercise jurisdiction over a nonresident defendant.

Our holding in *Friedetzky* serves as a helpful guide in determining whether the circuit court properly applied the long-arm statute of the UIFSA in the underlying case. In *Friedetzky*, after being served out of state with a custody suit, appellee entered a general line of appearance and an answer requesting "that the petition be dismissed with prejudice or denied, and that the court order genetic testing to determine the paternity" of the child. *Friedetzky*, 223 Md. App. at 728. After appellant filed an amended petition requesting that the court establish paternity, custody, child support, and attorney's fees, appellee filed a motion to dismiss for lack of personal jurisdiction and withdrew his request for genetic testing. *Id.* at 729. Appellee, a non-resident, argued that the circuit court did not have personal jurisdiction over him in proceedings pertaining to paternity, child support, or attorney's fees as none of the grounds for exercising jurisdiction under UIFSA's long-arm statute were satisfied. *Id.* The court awarded custody to appellant but found that it did not have jurisdiction over the pending parentage, support, and fee actions. *Id.* at 730-31. Appellant appealed and, among other things, sought review of whether appellee waived his ability to contest the exercise of jurisdiction under the UIFSA. *Id.* at 731-32.

We reversed. *Id.* at 750. Although we noted that "the UCCJEA provides limited immunity to nonresidents participating in a child custody proceeding in this State, such that the nonresident does not submit to personal jurisdiction for other matters solely by participating in the custody action," we concluded that appellee's "affirmative request for paternity. . . was not encompassed as part of a 'child custody proceeding'" under the

UCCJEA. *Id.* at 736-39. Therefore, this affirmative request, "coupled with his efforts to obtain discovery," invoked the circuit court's jurisdiction under the long-arm statute of the UIFSA—FL 10-304(a)(2). *Id.* at 746-47. We remanded to the circuit court and noted, "[a]s the old adage goes, one cannot un-ring a bell: once Appellee invoked the court's jurisdiction by requesting paternity testing, he could not retract it, deciding, instead, to move to dismiss for lack of personal jurisdiction." *Id.* at 747.

In the case now before us, the circuit court correctly determined that by filing a response to Ms. Kirkwood's initial motion for child support and attorney's fees, Mr. Fludd invoked the court's jurisdiction under FL § 10-304(a)(2). The response was captioned, in relevant part, "*Respondent[']s Pro Se Response* and Motion to Strike or in the Alternative Dismiss Plaintiff[']s 'Motion for Child Support [. . . .]"[12] (italic emphasis added, capitalization omitted). The response addressed the merits of Ms. Kirkwood's motion, qualifying it not only as a responsive pleading but also as a general appearance. *See McCormick v. St. Francis de Sales Church*, 219 Md. 422, 429 (1959) ("[T]he filing of the motion operated as a general appearance[.]"); *Pilkington v. Pilkington*, 230 Md. App. 561, 581 (2016) (A party makes a general appearance by "contest[ing] an action without

---

[12] We note that most of Mr. Fludd's subsequent requests of the court pertained to child custody and visitation. These filings fall within the UCCJEA, which provides limited personal jurisdiction immunity for nonresidents participating in child custody proceedings in Maryland. *See* FL § 9.5-108(a) ("A party to a child custody proceeding . . . is not subject to personal jurisdiction in this State for another proceeding or purpose *solely by reason of having participated, or of having been physically present for the purposes of participating in the [child custody] proceeding*.") (emphasis added). Therefore, we have not considered these requests in evaluating whether the circuit court had jurisdiction over Mr. Fludd under the UIFSA long-arm statute.

objecting to the court's personal jurisdiction."). Among other things, Mr. Fludd argued in the response that he was already paying child support by remitting a portion of his monthly disability payments to Ms. Kirkwood, and that, due to continued abusive filings by Ms. Kirkwood, she should pay for any fees generated by the litigation.

Mr. Fludd's response affirmatively requested the following relief from the court:

(1) Grant [his] Motions[;] (2) Order, that [Ms. Kirkwood] take and complete an Abuser Intervention Program[;] (3) Order that [Ms. Kirkwood] continue the reunification therapy process with the minor children immediately[;] (4) Order that [Ms. Kirkwood] pay for half the expenses for reunification therapy[;] (5) Find that the Disability payments are child support for the minor children[;] (6) Find and [order], that [Ms. Kirkwood] shall be responsible for any fees incurred by [Mr. Fludd] in this matter since January 1, 2016[;] (7) Enter a judgment against [Ms. Kirkwood] . . . for the new award of fees incurred in this matter; and (8) Such other relief as this [c]ourt deems appropriate.

(Paragraph breaks omitted).

We hold that FL § 10-304(a)(2) was satisfied when Mr. Fludd filed a responsive pleading, entered a general appearance, and affirmatively requested relief from the court. Once Mr. Fludd submitted to the court's jurisdiction under FL § 10-304(a)(2), he could not "un-ring [the jurisdictional] bell." *Friedetzky*, 223 Md. App. at 747. Accordingly, the circuit court correctly determined that it was able to exercise jurisdiction over Mr. Fludd under the UIFSA long-arm statute.

Although our jurisdictional inquiry under the UIFSA could end there, we hold that another prong of the UIFSA's long-arm statute—FL § 10-304(a)(6)—was satisfied when the circuit court credited Ms. Kirkwood's testimony that the children were conceived in Montgomery County, Maryland. We note that Mr. Fludd did not offer any testimony or

cross-examination of Ms. Kirkwood's testimony. He merely noted that he did not agree with her. We conclude, therefore, that the court's finding that Ms. Kirkwood and Mr. Fludd engaged in sexual intercourse in Maryland, and that their children *may* have been conceived as a result, was not clearly erroneous.[13]

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

[13] If the court's decision to exercise jurisdiction rested only on FL § 10-304(a)(6), meaning Mr. Fludd had not also submitted to the jurisdiction of the court by filing a responsive pleading requesting affirmative relief, we would also have to consider whether Mr. Fludd had minimum contacts with the forum such that the exercise of personal jurisdiction complied with the Due Process Clause of the Fourteenth Amendment. *Friedetzky,* 223 Md. App. at 748. When conducting a minimum contact analysis, "we consider (1) the extent to which the defendant has purposefully availed himself or herself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 748-49 (quoting *Bond*, 391 Md. at 723).

Based on the record in this case, including the docket which reflects hundreds of filings by Mr. Fludd, we determine that there were sufficient minimum contacts with the State of Maryland to support the circuit court's exercise of personal jurisdiction over Mr. Fludd. He resided in Maryland during most of the underlying litigation and filed his response to Ms. Kirkwood's motion for child support while he lived in the State. Taking into account the circuit court's earlier ruling that Mr. Fludd engaged in "abusive filing" in the Circuit Court for Montgomery County, it is axiomatic that he should have "reasonably anticipate[d] being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The circuit court also credited "the uncontradicted and unimpeached testimony" of Ms. Kirkwood that she and Mr. Fludd "'engaged in sexual intercourse in this State,' and the children who were conceived by those relations, are the children for whom support is currently sought[.]" This act is clear contact with the State of Maryland, and the instant action "arises out of" this contact. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984) (holding that a litigant has minimum contacts if the underlying cause of action "arises out of" defendant's activity in the state or the defendant had "sufficient contacts" with the state).